James Allen HARPER, a resident and citizen of Ohio previously doing business as Southern Ohio Disposal, and Southern Ohio Disposal LLC, an Ohio limited liability company, Plaintiffs,

v.

PUBLIC SERVICE COMMISSION OF WEST VIRGINIA, Edward H. Staats, Chairman,[1] R. Michael Shaw, Commissioner, and Martha Y. Walker, Commissioner, Defendants.

WV Association of Solid Waste Haulers and Recyclers, BFI Waste Systems of North America, Inc., Stewart's Sanitation, Sunrise Sanitation Services, Inc., Tygarts Valley Sanitation, Inc., and United Disposal Services, Inc., Intervenors-defendants.

No. CIV.A. 2:03–0516.

United States District Court,
S.D. West Virginia.

Nov. 19, 2003.

---

1. Pursuant to Rule 25(d), Federal Rules of Civil Procedure, the court has substituted Chairman Edward H. Staats for former Chairman James D. Williams, and R. Michael Shaw for former Commissioner Charlotte R. Lane.

John Philip Melick, Brian C. Helmick, Jackson Kelly, Charleston, WV, for Plaintiffs.

Richard E. Hitt, Franklin G. Crabtree, Cassius H. Toon, Public Service Commission of West Virginia, Charleston, WV, for PSC Defendants.

Samuel F. Hanna, Hanna & Hanna, Charleston, WV, for SWH.

Richard L. Gottlieb, Webster J. Arceneaux, III, Martin J. Glasser, Lewis, Glasser, Casey & Rollins, PLLC, Charleston, WV, for BFI.

Leonard B. Knee, Eric L. Calvert, Bowles, Rice, McDavid, Graff & Love, Charleston, WV, for Stewart's Sanitation, Sunrise Sanitation Services, Inc., Tygarts Valley Sanitation, Inc. and United Disposal Services, Inc.

## MEMORANDUM OPINION AND ORDER

STANLEY, United States Magistrate Judge.

Currently pending before the court are (1) a Motion to Dismiss, filed by the Public Service Commission ("PSC") and its Commissioners, named in their official capacities (collectively referred to as "PSC Defendants"), on August 5, 2003 (docket sheet document # 18); (2) a Motion to Dismiss, filed August 6, 2003, by the WV Association of Solid Waste Haulers and Recyclers ("SWH") (# 20); and (3) a Motion to Dismiss, filed August 6, 2003, by BFI Waste Systems of North America ("BFI") (# 22). Plaintiffs responded on August 20, 2003 (# 28), and the PSC Defendants (# 31) and BFI (# 32) replied on September 2, 2003, and September 4, 2003, respectively. The parties consented to proceeding before a magistrate judge, pursuant to 28 U.S.C. § 636(c)(1), and the motions are now ripe for decision.

*Factual Background and Underlying Proceedings*

Plaintiffs James Allen Harper and Southern Ohio Disposal LLC ("SOD") filed this action against the PSC Defendants.

By order entered July 30, 2003, the District Court permitted the SWH, BFI, Stewart's Sanitation, Sunrise Sanitation Services, Inc., Tygarts Valley Sanitation, Inc., and United Disposal Services, Inc. to intervene. (# 13.)

SOD, an Ohio limited liability company owned by plaintiff James Allen Harper, also a resident of Ohio, operates a solid waste disposal service. (# 1 (Verified Complaint), ¶ 5.) From a base in Pomeroy, Ohio, SOD employees drive garbage trucks to residences and businesses of customers in Ohio and West Virginia, empty refuse containers into the trucks, and then drive the trucks to a transfer station in Pomeroy, Ohio or a landfill near Nelsonville, Ohio, for disposal of the waste. SOD does not dispose of waste in West Virginia. (# 1, ¶ 5.) Neither Harper nor SOD holds any motor carrier operating authority from the PSC. Plaintiffs represent that Harper's wife contacted the PSC about the need for such authority before serving their first customers in 1999, and was told none was necessary so long as SOD's vehicles had apportioned tags, fuel stickers and other requirements imposed on interstate motor carriers. (# 1, ¶ 6.)

On March 22, 2000, General Refuse Service of Mason County, Inc. ("GRS"), whose successor in interest is BFI, filed a formal complaint against the Town of Mason ("Town") in the PSC, alleging that the Town violated the laws of the State of West Virginia by attempting to contract for the removal of solid waste, trash and rubbish with SOD, an entity that does not possess a certificate of convenience and necessity to operate within the Town. GRS requested the PSC to issue an order commanding the Town to cease and desist from the aforesaid alleged violation of West Virginia law. (# 1, Exhibit 1, p. 1.) On March 22, 2000, the PSC ordered that the Town satisfy the complaint or make answer thereto within ten days. (# 1, Exhibit 1, p. 2.) The Town answered on April 6, 2000, asserting that the complaint against it failed to state a claim upon which relief could be granted.

On April 25, 2000, PSC staff filed a letter and staff recommendation that SOD was an indispensable party in this case and that Commerce Clause issues would be raised insofar as the alleged present or future for hire transportation of solid waste would be from points and places in West Virginia to points and places in Ohio. The matter was referred to an Administrative Law Judge ("ALJ"), and by order entered May 17, 2000, ALJ Keith A. George required GRS to amend its complaint to include SOD. On May 24, 2000, GRS amended its complaint. (# 1, Exhibit 1, p. 2; # 1, ¶ 9.)

On June 21, 2000, the Town and SOD removed the PSC action to the United States District Court for the Southern District of West Virginia. (# 1, Exhibit 1, p. 2); *GRS v. Town of Mason, et al.*, No. 3:00–0512 (S.D.W.Va. Aug. 28, 2000). The Court in *GRS* determined, pursuant to 28 U.S.C. § 1441(a), that "the PSC's limited quasi-judicial functions are insufficient to view it as a state court for purposes of removal." (# 23 (BFI's Memorandum of Law in Support of its Motion to Dismiss), Exhibit 1, p. 6.) As a result, the District Court in *GRS* remanded the action to the PSC for further proceedings. (# 23, Exhibit 1, p. 7.)

Following a hearing on April 4, 2001, and briefing by the parties, ALJ Melissa K. Marland issued a Recommended Decision on July 9, 2001, wherein she determined that plaintiff Harper, doing business as SOD, could not be required to obtain a certificate of convenience and necessity from the PSC because that requirement constitutes an unlawful burden on interstate commerce as defined in *Medigen of*

*Kentucky, Inc. v. Public Service Comm'n,* 985 F.2d 164 (4th Cir.1993). (# 1, Exhibit 1, p. 17.) BFI and the PSC's staff took exception to the Recommended Decision and certain parties, including SWH, Sunrise Sanitation Services, Inc., United Disposal Service, Inc., Tygart's Valley Sanitation, Inc., Stewart's Sanitation and others, were allowed to intervene. (# 1, ¶ 11; # 1, Exhibit 2, pp. 4–7, 13.) Plaintiffs assert that at the outset of oral argument before the PSC on September 24, 2001, "Harper sought and obtained a ruling that the evidentiary case was closed, and that any person taking exception to the Recommended Decision must rely upon the record adduced before Chief Administrative Law Judge Marland on April 4, 2001." (# 1, ¶ 11.)

On October 21, 2002, the PSC issued an order in which it rejected the recommended decision of the ALJ and granted the relief originally sought by GRS. The PSC ordered that plaintiff Harper must cease and desist from collecting solid waste in West Virginia until he obtains a certificate of convenience and necessity, pursuant to West Virginia Code § 24A–2–5. (# 1, ¶ 12; # 1, Exhibit 2, p. 40.) Plaintiffs allege that the PSC erroneously relied on evidence developed after the close of the factual record. (# 1, ¶ 12.)

On October 30, 2002, plaintiff Harper petitioned the PSC to reconsider its decision or to conduct a further hearing to address its findings and conclusions set forth in the October 21, 2002, Commission Order. (# 1, ¶ 13; # 1, Exhibit 3.) On May 30, 2003, the PSC denied plaintiff Harper's request for reconsideration. (# 1, ¶ 15; # 1, Exhibit 4.) On June 2, 2003, plaintiff Harper petitioned the PSC to stay the May 30, 2003, Commission Order. (# 1, ¶ 16; # 1, Exhibit 5.) At the time the Complaint was filed in this Court on June 6, 2003, the PSC had taken no action with respect to the June 2, 2003, petition. (# 1, ¶ 17.) On June 11, 2003, the PSC stayed its earlier cease and desist order until July 26, 2003. (# 3 (PSC Defendants' Answer), Exhibit 2.) The parties have extended this stay by verbal agreement. (# 31 (PSC Defendants' Reply Memorandum in Support of Motion to Dismiss), p. 9 n. 9.)

As grounds for relief, Plaintiffs first allege that the PSC orders of October 21, 2002, and May 30, 2003, are an unlawful direct regulation of interstate commerce, and consequently, violate Plaintiffs' rights under the Commerce Clause. (# 1, ¶ 18.) Plaintiffs next seek relief under State law, alleging that the PSC orders are based on a misapplication of the statutes that define the PSC's jurisdiction and on findings of fact that are not only unsupported, but contrary to the properly adduced evidence. In addition, Plaintiffs assert that the PSC orders are based on an impermissibly stale evidentiary record. (# 1, ¶ 19.)

Third, Plaintiffs allege that the PSC Commissioners, acting under color and pretense of State statute, regulation and customs and usages, engaged in illegal conduct as alleged in the Complaint to injure Plaintiffs and deprive them of their rights, privileges and immunities secured by the Commerce Clause of the United States Constitution and 42 U.S.C. § 1983. (# 1, ¶¶ 20–24.) Finally, Plaintiffs seek a temporary restraining order and, thereafter, preliminary and permanent injunctions against the PSC Defendants, prohibiting them from enforcing PSC orders or otherwise interfering with SOD's interstate transportation of solid waste from West Virginia and other states. Plaintiffs further request that the court declare the rights, duties and obligations of the parties with respect to such transportation and other aspects of SOD's business, resolve, to the extent necessary, Plaintiffs' challenges to the PSC orders, and award

Plaintiffs their fees and costs pursuant to 42 U.S.C. § 1988. (# 1, Prayer for Relief.)

*Arguments of the Parties*

BFI avers that the *Rooker–Feldman* doctrine, enunciated in the cases of *District of Columbia Court of Appeals v. Feldman,* 460 U.S. 462, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1983) and *Rooker v. Fidelity Trust Co.,* 263 U.S. 413, 44 S.Ct. 149, 68 L.Ed. 362 (1923), precludes this court from exercising its jurisdiction despite the recent decision of the United States Supreme Court in *Verizon Maryland Inc. v. Public Service Comm'n,* 535 U.S. 635, 122 S.Ct. 1753, 152 L.Ed.2d 871 (2002). (# 23, pp. 8–11; # 31, pp. 6–7; # 32 (BFI's Response Memorandum of Law in Support of its Motion to Dismiss), pp. 2–4.)

SWH asserts that Plaintiffs' Complaint fails to state a cause of action upon which relief can be granted because, although 42 U.S.C. § 1983 does not require exhaustion of administrative remedies, *per se,* the fact that the proceeding involving Plaintiffs

> is ongoing and has not been appealed to the West Virginia Supreme Court of Appeals negates the plaintiffs' assertion that they have been deprived of their constitutional rights under the commerce clause of the United States Constitution. Specifically, because the plaintiffs have not followed the appeal procedures available to them, they have not yet been deprived of their rights in the underlying state proceeding. Moreover, in order to maintain an action for equitable relief, as the plaintiffs have alleged herein, the plaintiffs must further show that there is not an adequate remedy at law available to them.

(# 21 (Memorandum in Support of SWH's Motion to Dismiss), p. 6.)

The PSC Defendants, SWH and BFI assert that should jurisdiction exist, the court should abstain from exercising such jurisdiction in favor of the State adjudica-

tory process. (# 19 (PSC Defendants' Memorandum in Support of Motion to Dismiss), p. 4.) The PSC Defendants assert that application of the abstention doctrines enunciated in *Younger v. Harris,* 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971), *Burford v. Sun Oil Co.,* 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed. 1424 (1943), and *Colorado River Water Conservation Dist. v. United States,* 424 U.S. 800, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976), should result in a decision to abstain. (# 19, pp. 4–16; # 21, pp. 7–13; # 23, pp. 11–19.) BFI asserts that abstention precludes the exercise of supplemental jurisdiction over Plaintiffs' State law claims as well. (# 22, pp. 19–20.)

Finally, the PSC Defendants and SWH argue that the Eleventh Amendment to the United States Constitution bars this action and the *Ex Parte Young* exception does not apply. (# 19, pp. 17–19; # 21, pp. 13–14) (citing *Ex Parte Young,* 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908).)

In response to the above arguments, Plaintiffs, relying on *Verizon,* assert that this court has jurisdiction over Plaintiffs' federal question claims arising under the Commerce Clause and 42 U.S.C. § 1983. (# 28, pp. 5–8.) Plaintiffs assert that by virtue of Judge Chambers' ruling in *GRS v. Town of Mason,* the PSC is not a State court, but instead, a State administrative agency. Pursuant to *Verizon,* this court's review of the actions of the PSC is appropriate. (# 28, pp. 7–8.) Plaintiffs argue that abstention pursuant to *Younger, Burford* and *Colorado River* is inappropriate and that in particular, there is no ongoing State court proceeding and in fact, Plaintiffs are time-barred from petitioning the West Virginia Supreme Court of Appeals. (# 28, pp. 8–12.)

Plaintiffs argue that the Eleventh Amendment does not bar their federal question claims. Plaintiffs assert that

their claims do fall within the *Ex Parte Young* exception to Eleventh Amendment sovereign immunity. (# 28, pp. 13–16.) As to their State law claims, Plaintiffs represent that they will agree to dismissal without prejudice of their State law claims because "the PSC appears to have abandoned ... the previous notion ... that it can regulate plaintiffs as waste collectors ...." (# 28, p. 13.)

In reply, the PSC Defendants assert that "[t]hroughout its orders the Commission has consistently characterized solid waste collection companies utilizing motor vehicles ... as utilities as well as motor carriers." (# 31, p. 3.) The PSC Defendants contend that they have "not, as Plaintiffs contend, renounced this 'dual' jurisdiction over motor carrier solid waste collection companies." (# 31, p. 3.) In addition, the PSC Defendants assert that notwithstanding Plaintiffs' failure to pursue avenues available for review of the PSC's decision, an ongoing State proceeding could well exist should the court abstain in this matter. (# 31, pp. 8–10.) The PSC Defendants suggest that pursuant to the West Virginia Code of State Regulations ("CSR"), 150 CSR 1.19.5, any party, including the PSC, could seek to reopen the case at the State level at any time " 'by reason of matters which have arisen since the hearing ....' " (# 31, p. 9 (quoting 150 CSR 1.19.5).) The reopened case would necessitate a final order from the PSC which Plaintiffs may appeal by petition to the Supreme Court of Appeals of West Virginia within thirty days of the order's entry. (# 31, p. 9.)

*Standard of Review*

Our Court of Appeals has often stated the settled standard governing the disposition of a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure:

> In general, a motion to dismiss for failure to state a claim should not be granted unless it appears certain that the plaintiff can prove no set of facts which would support its claim and would entitle it to relief. In considering a motion to dismiss, the court should accept as true all well-pleaded allegations and should view the complaint in a light most favorable to the plaintiff.

*Mylan Labs., Inc. v. Matkari,* 7 F.3d 1130, 1134 (4th Cir.1993); *see also Brooks v. City of Winston–Salem,* 85 F.3d 178, 181 (4th Cir.1996) (same); *Gardner v. E.I. Dupont De Nemours and Co.,* 939 F.Supp. 471, 475 (S.D.W.Va.1996) (same). It is through this analytical prism the court evaluates the defendants' and the intervenors' motions.

*Analysis*

A. Application of the *Rooker–Feldman* Doctrine to Preclude Subject Matter Jurisdiction.

In *Plyler v. Moore,* 129 F.3d 728, 731 (4th Cir.1997), the United States Court of Appeals for the Fourth Circuit described the *Rooker–Feldman* doctrine as follows:

> Under the *Rooker–Feldman* doctrine, lower federal courts generally do not have jurisdiction to review state-court decisions; rather, jurisdiction to review such decisions lies exclusively with superior state courts and, ultimately, the United States Supreme Court. The *Rooker–Feldman* doctrine bars consideration not only of issues actually presented to and decided by a state court, but also of constitutional claims that are "inextricably intertwined with" questions ruled upon by a state court, as when success on the federal claim depends upon a determination "that the state court wrongly decided the issues before it."

(citations omitted); *see Rooker v. Fidelity Trust Co.,* 263 U.S. 413, 415–16, 44 S.Ct. 149, 68 L.Ed. 362 (1923); *District of Columbia Court of Appeals v. Feldman,* 460 U.S. 462, 486–87, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1983).

 As the United States Court of Appeals for the Fourth Circuit recently observed

> [t]he *Rooker–Feldman* doctrine ... preserves a fundamental tenet in our system of federalism that, with the exception of habeas cases, appellate review of state court decisions occurs first within the state appellate system and then in the United States Supreme Court. A litigant may not circumvent these jurisdictional mandates by instituting a federal action which, although not styled as an appeal, "amounts to nothing more than an attempt to seek review of [the state court's] decision by a lower federal court."

*American Reliable Ins. Co. v. Stillwell,* 336 F.3d 311, 316 (4th Cir.2003) (citations omitted).

The issue this court must determine is whether the orders issued by the PSC are considered "state court" decisions, such that the *Rooker–Feldman* doctrine would preclude this court's jurisdiction. Plaintiffs point to footnote 3 in the Supreme Court's recent *Verizon* decision, 535 U.S. 635, 644 n. 3, 122 S.Ct. 1753, 152 L.Ed.2d 871 (2002), as an affirmation that administrative agency decisions are exempt from *Rooker–Feldman.* (# 28, pp. 5–8.) Conversely, BFI asserts that this court should follow the decision of the Western District of Virginia in *Horner v. Department of Mental Health,* No. 5:02CV00099, 2003 WL 21391678 (W.D.Va. May 1, 2003), wherein the District Court adopted the findings and recommendation of a magistrate judge, 2003 U.S. Dist. LEXIS 12265 (W.D.Va. Mar. 14, 2003). According to

BFI, the magistrate judge "considered this [footnote] language [from *Verizon*] as dicta ... and refused to apply it ...." (# 22, p. 9.)

In footnote 3 of *Verizon,* the Supreme Court wrote that *Rooker–Feldman* "has no application to judicial review of executive action, including determinations made by a state administrative agency." *Verizon,* 535 U.S. at 644 n. 3, 122 S.Ct. 1753. In *Verizon,* the plaintiff alleged that an order issued by the Maryland Public Service Commission requiring it to pay certain amounts to a competing telephone service provider violated a provision of the Telecommunications Act of 1996. Verizon sought relief from the Commission's order " 'on the ground that such regulation is pre-empted by a federal statute which, by virtue of the Supremacy Clause of the Constitution, must prevail,' and its claim 'thus presents a federal question which the federal courts have jurisdiction under 28 U.S.C. § 1331 to resolve.' " *Id.* at 643, 122 S.Ct. 1753 (quoting *Shaw v. Delta Air Lines, Inc.,* 463 U.S. 85, 96 n. 14, 103 S.Ct. 2890, 77 L.Ed.2d 490 (1983)). The Supreme Court found federal question jurisdiction under § 1331, and in so doing, reversed a divided panel of the United States Court of Appeals for the Fourth Circuit.

The Fourth Circuit had held that there was no federal question jurisdiction under 28 U.S.C. § 1331, because 47 U.S.C. § 252(e)(6) created a limited federal right of review of state commission determinations in the telecommunications field. Because 47 U.S.C. § 252 did not confer jurisdiction over the type of dispute at issue in the case, the Fourth Circuit concluded that Congress intended the right of review to be exercised in state courts. *Bell Atlantic Maryland, Inc. v. MCI WorldCom, Inc.,* 240 F.3d 279, 308 (4th Cir.2001), *vacated, Verizon Maryland Inc. v. Public Service Comm'n,* 535 U.S. 635, 122 S.Ct. 1753, 152

L.Ed.2d 871 (2002), *on remand to Verizon Maryland Inc. v. RCN Telecom Services, Inc.*, 232 F.Supp.2d 539 (D.Md.2002). In the context of determining federal question jurisdiction, the Fourth Circuit applied *Rooker–Feldman*:

Finally, it would violate basic tenets of federalism to conclude, in the absence of specific federal authorization, that a federal court may review a State quasi-judicial body, such as the Maryland Public Service Commission. We have noted repeatedly that "[a]s a jurisdictional doctrine, *Rooker–Feldman* precludes the lower federal courts from second-guessing the merits of [a] state court judgment." While strict application of the doctrine requires a final judgment from State courts, the federal intrusion into State affairs is not any less when the judgment issues from a State quasi-judicial body.

*Id.*, 240 F.3d at 308 (footnote and citations omitted); *but see id.*, 240 F.3d at 313 n. 5 (King, R. dissenting) (noting that the "contrary to the assertion of the majority ... the *Rooker–Feldman* doctrine has no application here").

In reversing the Fourth Circuit, the Supreme Court determined that even if 47 U.S.C. § 252(e)(6) "does not *confer* jurisdiction, it at least does not *divest* the district courts of their authority under 28 U.S.C. § 1331 to review the Commission's order for compliance with federal law." *Verizon*, 535 U.S. at 642, 122 S.Ct. 1753. The Supreme Court determined that

resolution of Verizon's claim turns on whether the Act, or an FCC ruling issued thereunder, precludes the Commission from ordering payment of reciprocal compensation, and there is no suggestion that Verizon's claim is " 'immaterial' " or " 'wholly insubstantial and frivolous.' "

Verizon's claim thus falls within 28 U.S.C. § 1331's general grant of jurisdiction, and contrary to the Fourth Circuit's conclusion, nothing in 47 U.S.C. § 252(e)(6) purports to strip that jurisdiction.

*Id.* at 643, 122 S.Ct. 1753 (quoting *Steel Co. v. Citizens for Better Env't*, 523 U.S. 83, 89, 118 S.Ct. 1003, 140 L.Ed.2d 210 (1998)).

In a footnote at the conclusion of the Supreme Court's discussion of federal question jurisdiction, the Supreme Court acknowledges the Commission's suggestion "that the *Rooker–Feldman* doctrine precludes a federal court from exercising jurisdiction over Verizon's claims." *Id.* at 644 n. 3, 122 S.Ct. 1753. The Supreme Court wrote that

[t]he *Rooker–Feldman* doctrine merely recognizes that 28 U.S.C. § 1331 is a grant of original jurisdiction, and does not authorize district courts to exercise appellate jurisdiction over state-court judgments, which Congress has reserved to this Court, see § 1257(a). The doctrine has no application to judicial review of executive action, including determinations made by a state administrative agency.

*Id.* (citations omitted).

 Though the Supreme Court's statement about *Rooker–Feldman* is arguably dicta, "dicta of the United States Supreme Court should be very persuasive." *Fouts v. Maryland Cas. Co.*, 30 F.2d 357, 359 (4th Cir.1929). In fact, dicta is "instructive of the Supreme Court's views and cannot be dismissed out of hand .... Where there is no clear precedent to the contrary," this court cannot ignore the Supreme Court's dicta. *Wright v. Morris*, 111 F.3d 414, 419 (6th Cir.1997); *see also Gaylor v. United States*, 74 F.3d 214, 217 (10th Cir.1996) ("While these statements are dicta, this court considers itself bound

by Supreme Court dicta almost as firmly as by the Court's outright holdings, particularly when the dicta is recent and not enfeebled by later statements.")

Before the Supreme Court's statement in *Verizon*, several circuit courts of appeals published decisions on the issue of the applicability of *Rooker–Feldman* to state administrative proceedings. The Third, Fifth, Seventh and Eleventh Circuits reached conclusions consistent with the *Verizon* footnote. *See Van Harken v. City of Chicago*, 103 F.3d 1346, 1348–49 (7th Cir.1997) (*Rooker–Feldman* does not apply to administrative decision on traffic violation); *Narey v. Dean*, 32 F.3d 1521, 1525–26 (11th Cir.1994) (*Rooker–Feldman* does not apply to an unreviewed decision of state personnel board); *Ivy Club v. Edwards*, 943 F.2d 270, 284 (3d Cir.1991) (*Rooker–Feldman* does not apply to administrative decision by New Jersey Division on Civil Rights, Department of Law and Public Safety); *Scott v. Flowers*, 910 F.2d 201, 208 (5th Cir.1990) (*Rooker–Feldman* does not apply to reprimand by Texas Commission of Judicial Conduct because while the reprimand was judicial in nature, the Commission was not an agent of the state court system).

The Fourth Circuit, in the unpublished decision of *Fleming v. Worker's Comp. Comm'n*, 78 F.3d 578, 1996 WL 93843 (4th Cir.1996), reached the same conclusion consistent with *Verizon* and the decisions cited above. In *Fleming*, the plaintiff sought injunctive and declaratory relief against the Virginia Worker's Compensation Commission and his former employer. The district court dismissed the Commission because the plaintiff had been paid all benefits due him and his request for equitable relief had become moot. In addition, the court granted summary judgment to the employer on the ground that it was not a state actor and thus not amenable to suit

under § 1983. *Id.*, 78 F.3d 578, 1996 WL 93843, at *1. The Fourth Circuit affirmed and in a footnote, wrote that

[t]he appellees have suggested that we remand this case so that it may be dismissed; they maintain that the district court should have declined to assume jurisdiction over this dispute on the principle that the merits of state court judgments are not subject to federal review upon the mere allegation that the judgment itself violates the plaintiff's constitutional rights. *Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 416, 44 S.Ct. 149, 68 L.Ed. 362 (1923); *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 482, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1983); *see also Johnson v. De Grandy*, 512 U.S. 997, 114 S.Ct. 2647, 2654, 129 L.Ed.2d 775 (1994). We disagree. Even if the limited, informal actions taken by the Commission in the instant case could be construed as "judgments," state administrative agencies are not "courts" within the meaning of the *Rooker–Feldman* doctrine. *Narey v. Dean*, 32 F.3d 1521, 1524–26 (11th Cir.1994); *Ivy Club v. Edwards*, 943 F.2d 270, 284 (3d Cir.), *cert. denied*, 503 U.S. 914, 112 S.Ct. 1282, 117 L.Ed.2d 507 (1992).

*Fleming*, 1996 WL 93843, at *1 n. 4. While the statement of the Fourth Circuit in *Fleming* is arguably dicta, its consistency with the decisions of the Third, Fifth, Seventh and Eleventh Circuit Courts of Appeals cited above is significant.

Thus, prior to *Verizon*, all the circuits that had spoken on the issue through a published decision (and the Fourth Circuit in an unpublished decision in dicta) reached conclusions consistent with the Supreme Court's subsequent statement in *Verizon*.

Furthermore, since *Verizon*, courts have acknowledged and applied the Su-

preme Court's statement about *Rooker–Feldman*. In *Southern California Edison Co. v. Lynch*, 307 F.3d 794, 805 (9th Cir. 2002), a case in which an electric public utility brought an action for injunctive and declaratory relief against commissioners of the state public utilities commission for their failure to increase the utility's retail rates, the Ninth Circuit, relying on *Verizon*, stated that "[t]he *Rooker–Feldman* doctrine does not apply to the actions of the Commission because it is a state administrative agency, not a court." In *National R.R. Passenger Corp. v. Pennsylvania Public Utility Comm'n*, 342 F.3d 242, 257 (3d Cir.2003), the Third Circuit, citing *Verizon* and *Feldman*, acknowledged that "[t]he Supreme Court has made clear, however, that the *Rooker–Feldman* doctrine only applies to state judicial proceedings, not administrative or legislative proceedings." The court in *National Railroad* determined that "[a]lthough [proceedings before the] PUC may have some of the indicia of court proceedings, the PUC is not a court of record and it is therefore not entitled to the application of *Rooker–Feldman*." *Id.*

Despite BFI's assertions to the contrary, the court finds the *post-Verizon* decision by the Western District of Virginia in *Horner v. Department of Mental Health*, No. 5:02CV00099, 2003 WL 21391678 (W.D.Va. May 1, 2003), to be unpersuasive. In *Horner*, the plaintiff filed an action pursuant to 42 U.S.C. § 1983 alleging violation of the First and Fourteenth Amendments resulting from his discharge from public employment. The plaintiff in *Horner* pursued his claim through the administrative channels of Virginia's public employee grievance procedure system and, in accordance with Virginia law, ultimately appealed two decisions by a hearing officer in the Commonwealth's department of employment dispute resolution to the state circuit court.

The circuit court reversed the hearing officer's decisions, but did not consider the plaintiff's substantive claims, including federal constitutional claims. The decision was appealed to the court of appeals and a stay of the circuit court decision was issued pending outcome of the appeal. At the time, no decision had been issued by the court of appeals. *Id.*, 2003 WL 21391678, at *2.

The magistrate judge recommended that the presiding district judge dismiss the plaintiff's action pursuant to *Rooker–Feldman*. The magistrate judge acknowledged the plaintiff's argument, relying "almost entirely" on the *Verizon* footnote, but also on *Fleming*, that the administrative decisions and the appeals thereof to the state courts are not adjudicatory but rather rule-making and thus, do not implicate *Rooker–Feldman*. *Horner*, 2003 WL 21391678, at *3, 2003 U.S. Dist. LEXIS 12265, at *9. Neither the magistrate judge nor the district judge made further mention of *Verizon* and instead ultimately found *Rooker–Feldman* applicable. The magistrate judge, in language largely adopted by the District Court, stated that characterizing the grievance proceedings below as rule-making was

a stretch at best, and notwithstanding the unpublished decision by the Fourth Circuit in *Fleming*, it is plainly incorrect. The court's rather loose observations about whether state administrative proceedings are subject to *Rooker–Feldman*, are overshadowed by the fact that, in *Fleming*, the Fourth Circuit addressed a constitutional question of whether the plaintiff was deprived of due process by the unilateral suspension of his worker's compensation without notice and an opportunity to be heard. Finding no action under color of state law and, thus, no state action, the court affirmed the trial court's dismissal of the

case. In the undersigned's judgment, *Rooker–Feldman* never was brought squarely into play, even if the *Fleming* decision has precedential value here, which it does not. It is the undersigned's view that the state grievance process which is the subject of this case was and is an adjudicatory process subject to the *Rooker–Feldman* doctrine. *Id.* at *4, 2003 U.S. Dist. LEXIS 12265, at *12–13; *see also Horner,* 2003 WL 21391678, at *4 (adopting language of the magistrate judge).

In the absence of a substantive discussion of *Verizon* in *Horner,* the court finds little precedential value in that case. The Supreme Court in *Verizon,* as well as a number of circuit courts of appeals both before and since *Verizon,* have all concluded that state administrative proceedings, such as those before the PSC, are exempt from *Rooker–Feldman.*

Thus, the court finds that the *Rooker–Feldman* doctrine does not apply in the instant matter as a means of precluding subject matter jurisdiction. However, the court does have jurisdiction because the action presents a federal question. 28 U.S.C. § 1331.

### B. Abstention.

■ In *Colorado River Water Conservation Dist. v. United States,* 424 U.S. 800, 813, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976), the Supreme Court reiterated the notion that "[a]bstention from the exercise of federal jurisdiction is the exception, not the rule." Indeed, abstention is " 'an extraordinary and narrow exception to the duty of a District Court to adjudicate a controversy properly before it' " and, " 'can be justified under this doctrine only in the exceptional circumstances where the order to the parties to repair to the state court would clearly serve an important countervailing interest.' " *Id.* (quoting *County of Allegheny v. Frank Mashuda Co.,* 360 U.S. 185, 188–89, 79 S.Ct. 1060, 3 L.Ed.2d 1163 (1959)).

### 1. *Younger Abstention.*

■ The *Younger* doctrine of abstention expresses "a strong federal policy against federal-court interference with pending state judicial proceedings absent extraordinary circumstances." *Middlesex County Ethics Comm. v. Garden State Bar Ass'n,* 457 U.S. 423, 431, 102 S.Ct. 2515, 73 L.Ed.2d 116 (1982). "The doctrine recognizes that state courts are fully competent to decide issues of federal law, and has as a corollary the idea that all state and federal claims should be presented to the state courts." *Richmond, Fredericksburg & Potomac R.R. Co. v. Forst,* 4 F.3d 244, 251 (4th Cir.1993) (citation omitted). For a court to abstain pursuant to *Younger,* the following three-part test must be met: "*first,* [is there an] ... ongoing state judicial proceeding; *second,* do the proceedings implicate important state interests; and *third,* is there an adequate opportunity in the state proceedings to raise constitutional challenges." *Middlesex,* 457 U.S. at 432, 102 S.Ct. 2515.

### A. On-going Judicial Proceeding

■ As to the first element of *Younger,* "proceedings conducted before various types of state administrative agencies, if conducted in a trial-like manner and subject to state judicial review, may qualify as 'judicial in nature' ...." *Phillips v. Virginia Bd. of Med.,* 749 F.Supp. 715, 721 (E.D.Va.1990) (citing *Ohio Civil Rights Comm'n v. Dayton Christian Schools, Inc.,* 477 U.S. 619, 628–29, 106 S.Ct. 2718, 91 L.Ed.2d 512 (1986); *Middlesex,* 457 U.S. at 433–34, 102 S.Ct. 2515).

Plaintiffs do not seriously dispute that the proceedings before the PSC leading to the October 21, 2002 and May 30, 2003,

PSC orders were anything other than quasi-judicial proceedings. Indeed, there can be little doubt that the proceedings before the PSC were "judicial in nature." Judge Chambers characterized the PSC as having "quasi-judicial functions" when he determined that the PSC was not a state court for the purpose of removal under 28 U.S.C. § 1441(a). (# 23, Exhibit 1, p. 6.)

▉ Furthermore, the proceedings before the PSC were conducted in an adversarial, trial-like setting. GRS filed a formal complaint with the PSC, the parties engaged in discovery and the matter was set for hearing before ALJ Marland. At the hearing, witness testimony and exhibits were presented and, on July 9, 2001, ALJ Marland issued a written recommended decision. (# 1, Exhibit 1.) PSC staff and BFI took exception to the recommended decision and on October 21, 2002, the PSC issued an order declining to adopt the recommended decision and requiring instead, that plaintiff Harper obtain a certificate of convenience and necessity for SOD. (# 1, Exhibit 2.) Plaintiff Harper moved for reconsideration, and on May 30, 2003, the PSC denied the motion. (# 1, Exhibits 3 and 4.) On June 2, 2003, plaintiff Harper petitioned the PSC to stay the May 30, 2003, Commission Order. (# 1, Exhibit 5.) On June 11, 2003, the PSC stayed its cease and desist order until July 26, 2003. (# 3, Exhibit 2.) The parties have since extended this stay by verbal agreement. (# 19, p. 3.) In short, where the state proceeding "investigates, declares and enforces liabilities as they stand on present and past facts and under laws supposed already to exist," as was the case with the proceedings before the PSC, those state administrative proceedings are judicial in nature. *New Orleans Pub. Serv., Inc. v. Council of City of New Orleans*, 491 U.S. 350, 370–71, 109 S.Ct. 2506, 105 L.Ed.2d 298 (1989) (quoting *Prentis v. Atlantic Coast Line Co.*, 211 U.S. 210, 226, 29 S.Ct. 67, 53 L.Ed. 150 (1908)).

In addition, the proceedings before the PSC are subject to State judicial review. West Virginia Code § 24–5–1 (2001) provides that

[a]ny party feeling aggrieved by the entry of a final order by the commission, affecting him or it, may present a petition in writing to the supreme court of appeals, or to a judge thereof in vacation, within thirty days after the entry of such order, praying for the suspension of such final order.

The issue upon which the parties vehemently disagree is whether the proceedings before the PSC are "ongoing." Plaintiffs urge that there is no ongoing State judicial proceeding and that instead, "[s]ince May 30, 2003, the PSC has been without the jurisdiction to alter or amend its decision; it could only stay its effective date, which it did on June 11, 2003 ... pursuant to Harper's petition ... under *CSR § 150–1–19.4.*" (# 28, p. 9.) According to Plaintiffs, after May 30, 2003, they had two options: "(i) filing of the instant complaint and (ii) filing of a petition for review of the PSC's orders within 30 days with the Supreme Court of Appeals of West Virginia pursuant to *W. Va.Code § 24A–8–1.*" (# 28, p. 9.) Plaintiffs assert that if they now appeal to the West Virginia Supreme Court, Defendants would assert that their appeal is untimely. As such, Plaintiffs contend that there is no ongoing State judicial proceeding and that by finding abstention, this court will grant Defendants a "free pass" from any judicial review. (# 28, p. 10.)

▉ "[T]he proper point of reference for determining whether state proceedings are 'ongoing' is the date the federal complaint is filed." *Federal Express Corp. v. Tennessee Public Service Comm'n*, 738 F.Supp. 1140, 1143 (M.D.Tenn.1990) (citing

*Pennzoil Co. v. Texaco, Inc.*, 481 U.S. 1, 17–18, 107 S.Ct. 1519, 95 L.Ed.2d 1 (1987)). As of June 6, 2003, when Plaintiffs filed their Complaint in federal court, Plaintiff Harper's June 2, 2003, petition asking that the PSC stay its May 2, 2003, order was pending before the PSC. While Plaintiffs contend that the fact that the petition for a stay was pending before the PSC at the time they filed their Complaint and remained so for five more days thereafter is "truly meaningless, especially more than two months later" (# 28, p. 11 n. 14), the case law on the subject is simply not in accordance with Plaintiffs' position.

Even since the filing of the Complaint, the matter continues to be pending before the PSC. The parties have verbally agreed to an extension of the PSC's June 12, 2003, order which temporarily stayed its May 30, 2003, cease and desist order. Plaintiffs' assertions that the "PSC proceedings are **finished**" and that the PSC has only stayed the effective date of its order such that it has been without the jurisdiction to alter or amend its decision since May 30, 2003, are unconvincing, particularly in light of the PSC's statements in its Reply as to its willingness to facilitate further review. The PSC initially intimates (# 19, p. 4) and even states outright (# 31, p. 9) that an appeal to the Supreme Court of Appeals of West Virginia is still possible and that the PSC would, in essence, facilitate such an appeal. The PSC states in its Reply that pursuant to 150 CSR 1.19.5, any party, including the PSC, "could seek to reopen this case at the state level at any time 'by reason of matters which have arisen since the hearing ....' [T]he reopened case will necessitate a final order from the Commission which [Plaintiffs] may appeal by petition to the state Supreme Court within 30 days of the order's entry ...." (# 31, p. 9 (quoting 150 CSR 1.19.5)). In the alternative, the PSC states that "it could enter a cease and desist

order requiring immediate cessation of Plaintiff's solid waste collection in West Virginia on the basis of the proceeding below. Again Plaintiffs would have a vehicle for expedient review in the state Supreme Court." (# 31, p. 9) (footnote omitted).

Even if Plaintiffs are correct in their assertion that the State judicial proceedings are finished, this does not preclude a finding that a State judicial proceeding is ongoing for purposes of *Younger*. In *O'Neill v. City of Philadelphia*, 32 F.3d 785, 790 (3d Cir.1994), the Third Circuit answered in the affirmative, the question of "whether a state proceeding is 'pending,' and *Younger* abstention proper, where the adjudicatory process has become final as a result of the federal claimant's failure to pursue state-court judicial review of an unfavorable state administrative determination?"

In *O'Neill*, the plaintiffs were issued parking tickets and neither paid fines nor answered various notices sent them. The plaintiffs eventually requested hearings and a hearing examiner fined the plaintiffs. Instead of appealing the hearing examiner's decision in state court, plaintiffs filed a federal court action pursuant to 42 U.S.C. § 1983. *Id.* at 788–89. The court in *O'Neill* stated that

we have been given no reason why a litigant in a state administrative proceeding should be permitted to forego state-court judicial review of the agency's decision in order to apply for relief in federal court. Rather, we find the grounds offered by the Supreme Court to support its holding in *Huffman [v. Pursue, Ltd.*, 420 U.S. 592, 95 S.Ct. 1200, 43 L.Ed.2d 482 (1975)]—that state appellate review of a state court judgment must be exhausted before federal court intervention is permitted—are

equally persuasive when considered with respect to state-court judicial review of a state administrative determination.

*Id.* at 790–91. The court found no inconsistency between its holding and the principle of *Patsy v. Florida Bd. of Regents,* 457 U.S. 496, 102 S.Ct. 2557, 73 L.Ed.2d 172 (1982) that administrative remedies need not be exhausted prior to bringing a § 1983 action in federal court. Relying on *Dayton Christian Schools,* 477 U.S. at 627 n. 2, 106 S.Ct. 2718, which found that application of *Younger* principles to pending state administrative proceedings which were coercive rather than remedial in nature was fully consistent with *Patsy,* the court in *O'Neill* noted that

> [t]he critical distinction between *Dayton Christian Schools* and *Patsy* is that *Patsy* involved a *remedial* action brought by the plaintiff to vindicate a wrong which had been inflicted by the State. In contrast, *Dayton Christian Schools* involved an administrative proceedings [sic] initiated by the State, before a state forum, to enforce a violation of state law. That is, in *Dayton Christian Schools,* the action taken by the Ohio Civil Rights Commission was *coercive* rather than remedial, just as the action taken by the City of Philadelphia, to enforce its traffic tickets against O'Neill and Goodman, was coercive action which the plaintiffs sought to circumvent by filing their complaint in federal court.

*O'Neill,* 32 F.3d at 791 n. 13.

The Third Circuit also reasoned that requiring litigants to pursue judicial review in state court serves two additional purposes "which go to the very heart of the 'comity' concerns upon which *Younger* abstention is grounded." *Id.* at 791. The court explained that

> (1) "the state courts may construe state law in a way which renders a constitutional decision unnecessary," and (2) "interests of comity are advanced, and friction reduced, if the courts of a state, rather than the federal courts, determine that the United States Constitution requires the state to alter its practices."

*Id.* (quoting *Alleghany Corp. v. Pomeroy,* 898 F.2d 1314, 1317–18 (8th Cir.1990)). Thus, the court in *O'Neill* concluded that

> state proceedings remain "pending," within the meaning of *Younger* abstention, in cases such as the one before us, where a coercive administrative proceeding has been initiated by the State in a state forum, where adequate state-court judicial review of the administrative determination is available to the federal claimants, and where the claimants have chosen not to pursue their state-court judicial remedies, but have instead sought to invalidate the State's judgment by filing a federal action.

*Id.; see also Phillips,* 749 F.Supp. at 725 (finding an ongoing judicial proceeding where claim in federal court filed at the juncture between a state administrative enforcement action, commenced by the state to vindicate an important state interest, and state court appellate review of that action provided for by state statute).

The court finds *O'Neill* applicable in the instant matter. While GRS actually initiated the proceedings before the PSC against the Town of Mason, GRS eventually amended the complaint to name SOD as a co-defendant in the proceeding. The proceedings, in which SOD eventually was included as a co-defendant at the request of PSC staff, were coercive rather than remedial in nature in that the purpose of the proceedings before the PSC was to determine whether SOD was required to obtain a certificate of convenience and necessity. The PSC proceedings clearly were not "brought by the plaintiff to vindicate a wrong which had been inflicted by the State." *O'Neill,* 32 F.3d at 791 n. 13.

The court acknowledges the decision by the Fifth Circuit in *Thomas v. Texas State Bd. of Med. Exam'rs*, 807 F.2d 453, 454 (5th Cir.1987), in which a physician whose license was revoked by a state administrative board, initially sought review of his license revocation in a Texas state court, but later dismissed the state action and brought a § 1983 action in federal court. In *Thomas*, the court determined that *Younger* abstention was inappropriate because "no state court trial has taken place and no injunction against a pending state proceeding is sought . . . ." *Id.* at 456. As such "the policies on with the *Younger* doctrine is premised 'have little force . . . .'" *Id.* at 457 (citations omitted). For the same thorough and compelling reasons discussed by the court in *Phillips*, 749 F.Supp. at 725–730, the court finds *Thomas* to be unpersuasive and distinguishable.

### B. Important State Interest

Turning to the second inquiry under *Younger*, Plaintiffs focus their argument on whether State judicial proceedings are ongoing and make little mention of the second requirement under *Younger* that the proceedings implicate important State interests. While the parties in this case dispute the PSC's source of authority for attempting to regulate Plaintiffs (i.e., whether solid waste collectors are "utilities" or simply "common carriers by motor vehicle"), regardless of the ultimate answer on this issue, important State interests are at stake in the PSC proceeding.

As Judge Copenhaver observed in the context of determining whether an important State interest was at stake for purposes of *Younger* abstention where the State proceeding involved the PSC's requirement of a certificate of need to operate a landfill, "[i]mproper disposal of solid wastes creates a risk of pollution and illness. It is well settled that preventing such risks is one of the preeminent functions of a state's police power to protect the health and welfare of its residents." *HAM Sanitary Landfill, Inc. v. Casto*, No. 2:98–0505, at 15–16 (S.D.W.Va. Mar. 31, 1999) (attached to # 19 as Attachment B).

As in *HAM*, the PSC proceedings in the instant matter implicate the State of West Virginia's interest in preventing pollution and illness caused by the improper disposal of solid waste and, thereby, protecting the health and welfare of its citizens. As this Court explained in *Medigen*, upon issuance of a certificate of convenience and necessity by the PSC, "[t]he PSC has authority to require a certificate holder to provide service to all members of the public within its certificate area. In addition, the PSC regulates other aspects of the transporter's operations, including rates charged to customers." *Medigen of Kentucky, Inc. v. Public Service Comm'n*, 787 F.Supp. 590, 593 (S.D.W.Va.1991), *aff'd*, 985 F.2d 164 (4th Cir.1993); W. Va.Code § 24A–2–5 (2001). At least one conceivable benefit of requiring that service be provided to all residents in a particular area at rates fixed by the PSC is a reduction in open dumping by those who might be excluded from service if service were unregulated or who may be unable to afford service from an unregulated provider. A reduction in open dumping reduces the risk of pollution and illness and furthers the important goal of protecting the health and welfare of this State's citizens. Thus, the PSC proceedings which considered whether Plaintiffs were required to obtain a certificate of convenience and necessity will necessarily impact the State's interest in protecting the health and welfare of its citizens.

### C. Opportunity to Raise Constitutional Challenge

Finally, the court finds there is an adequate opportunity in the State proceed-

ings to raise constitutional challenges. As discussed above, the PSC has stated its willingness to facilitate an appeal of the Commission orders to the West Virginia Supreme Court of Appeals. West Virginia Code § 24–5–1, which allows for review by the West Virginia Supreme Court of a final PSC order, provides that any party aggrieved by the entry of a final order by the PSC may present a petition in writing to the West Virginia Supreme Court. Plaintiffs have not suggested, nor is there any indication that this provision "does not authorize judicial review of claims that agency action violates the United States Constitution." *Dayton Christian Schools,* 477 U.S. at 629, 106 S.Ct. 2718.

Therefore, the court concludes that abstention under *Younger* is appropriate.

### 2. *Burford Abstention.*

■■■ "The *Burford* doctrine is grounded in respect for the sovereignty of the states and the desire to avoid unnecessary federal interference with complex issues of state law." *Forst,* 4 F.3d at 253 (citing *Burford,* 319 U.S. at 332–34, 63 S.Ct. 1098). Abstention is appropriate under *Burford* where there exists a " 'complex state regulatory scheme concerning important matters of state policy for which impartial and fair administrative determinations subject to expeditious and adequate judicial review are afforded.' " *Browning–Ferris, Inc. v. Baltimore Cty., Md.,* 774 F.2d 77, 79 (4th Cir.1985) (quoting *Aluminum Co. of Am. v. Utilities Comm'n of North Carolina,* 713 F.2d 1024, 1029 (4th Cir.1983)).

In arguing that *Burford* abstention is inappropriate, Plaintiffs assert that the circumstances wherein the District Court in *Medigen* declined to find abstention under *Burford* apply with equal force here. In particular, Plaintiffs assert that as in *Me-*

*digen,* the question of whether requiring a prospective market participant to make a showing of public convenience and necessity unconstitutionally burdens interstate commerce does not implicate difficult questions of State law and would not be disruptive of State efforts to establish a coherent policy with respect to waste hauling. (# 28, p. 11.) In addition, Plaintiffs point out that in *Medigen,* the District Court permitted the plaintiffs to seek relief against the PSC to prohibit interference with the plaintiffs' transportation of medical waste from West Virginia or other states, even though the plaintiffs had an application for a certificate to do so then pending before the PSC. (# 28, p. 11.)

The court finds the circumstances under which the Court in *Medigen* declined to abstain under ·*Burford* distinguishable from this action in two important respects. In *Medigen,* much like the instant matter, plaintiffs challenged as a violation of the Commerce Clause, the requirement that they obtain a certificate of convenience and necessity prior to transporting *medical* waste from West Virginia to another state for disposal. After briefing in the *Medigen* matter was completed, West Virginia enacted the West Virginia Medical Waste Act, West Virginia Code §§ 20–5J–1 through 20–5J–10 (2002), which, among other things, requires transporters of infectious waste to be regulated by the PSC under the Common Carriers of Motor Vehicles Act, West Virginia Code §§ 24A–2–1 through 24A–2–5 (2001) and requires the PSC to provide for " 'a separate and distinct category of special certificates of convenience and necessity for infectious medical waste' transporters." *Id.* at 592–93 (quoting W. Va.Code § 20–5J–10(b)). The District Court in *Medigen* found abstention under *Burford* inappropriate in part, because while the State was "in the process of developing a regulatory scheme for

the management of medical waste, ... regulations under the portion of the statutory scheme under challenge have not yet been promulgated or adopted. Consequently, a decision by this court will not disturb an existing scheme." *Medigen,* 787 F.Supp. at 594.

Unlike the status of the regulation of *medical* waste at the time of the *Medigen* decision, there can be no doubt that there is an existing and complex regulatory scheme in place for the regulation of *solid* waste in West Virginia that concerns important matters of State policy.

In the West Virginia Solid Waste Management Act, the West Virginia legislature professed its purpose of "establish[ing] a comprehensive program of controlling all phases of solid waste management." W. Va.Code § 22–15–1(a) (2002). The Legislature found that

> solid waste disposal has inherent risks and negative impact on local communities and specifically finds the following: (1) Uncontrolled, inadequately controlled and improper collection, transportation, processing and disposal of solid waste is a public nuisance and a clear and present danger to people; (2) provides harborages and breeding places for disease-carrying, injurious insects, rodents and other pests harmful to the public health, safety and welfare; (3) constitutes a danger to livestock and domestic animals; (4) decreases the value of private and public property, causes pollution, blight and deterioration of the natural beauty and resources of the state and has adverse economic and social effects on the state and its citizens; (5) results in the squandering of valuable nonrenewable and nonreplenishable resources contained in solid waste; (6) that resource recovery and recycling reduces the need for landfills and extends their life; and that (7) proper disposal, re-

source recovery or recycling of solid waste is for the general welfare of the citizens of this state.

W. Va.Code § 22–15–1(c).

To accomplish these goals, the legislature enacted an extensive statutory scheme that addresses many aspects of solid waste management, including mandatory disposal and proof thereof by each person in West Virginia occupying a residence or business, management of solid waste facilities and sewage sludge and waste tire management, among others. W. Va.Code §§ 22C–4–10(a)(1)–(2), 22–15–20 and 22–15–21 (2002). Rules were promulgated and adopted as well. *See* 33 CSR 1 (Solid Waste Management), 33 CSR 2 (Sewage Sludge Management), 33 CSR 5 (Waste Tire Management), 33 CSR 7 (Proof of Proper Solid Waste Disposal).

The PSC has an important role in the comprehensive solid waste program. West Virginia Code § 22C–3–23, related to the creation and role of a Solid Waste Management Board, states that "[s]olid waste collectors and haulers who are 'common carriers by motor vehicle,' as defined in ... [§ 24A–1–2] ... shall continue to be regulated by the public service commission in accordance with the provisions of ... [§ 24A–1–1 et seq.] and rules promulgated thereunder." W. Va.Code § 22C–3–23 (2002); *see also* W. Va.Code § 24A–2–4a (2001) (motor carriers transporting solid waste; pass through of landfill tip fees as rate surcharge). The statute further provides that

> [n]othing in this article gives the board any power or right to regulate such solid waste collectors and haulers in any manner, but the public service commission, when it issues a new certificate of convenience and necessity ... shall consult with the board regarding what action it could take which would most likely further the implementation of the board's

solid waste disposal shed plan and solid waste disposal projects and shall take any reasonable action that will lead to or bring about compliance of such waste collectors and haulers with such plan and projects.

W. Va.Code § 22C–3–23.

The PSC promulgated and adopted rules under West Virginia Code §§ 24A–2–3, 24A–3–4, 24A–3–6 and 24A–5–5 applicable to motor carriers transporting solid waste. The rules relate to conditions of service, termination of service for nonpayment, participation by common carriers in recycling programs, providing lists of residential customers or of nonsubscribing residents to solid waste authorities, and establishment of monthly bulky goods collection service. 150 CSR 9.7.1 through 9.7.6.

█ Unlike medical waste, the State of West Virginia has established an extensive and complex regulatory structure related to the regulation of solid waste. If the court chose not to abstain in the instant matter, its decision on the merits of Plaintiffs' claims could conceivably disturb this regulatory scheme. The court is not inclined to embark on that endeavor when there exists an adequate means of judicial review before the PSC, the West Virginia Supreme Court of Appeals, and ultimately the Supreme Court of the United States, all of which are capable of deciding the federal claims raised by Plaintiffs. As the court in *Canaday v. Koch*, 608 F.Supp. 1460, 1469 (S.D.N.Y.1985) observed, the presence of

> a constitutional claim does not necessarily bar abstention … [and] abstention does not mean that the federal courts turn their backs on issues of federal interest. It means only that in the particular case it is more appropriate that the federal rights be safeguarded by proper adjudication in the state system.

The state decisionmakers are constitutionally bound to apply federal law where appropriate, and federal review remains available, by appeal to the United States Supreme Court from decision of the state's highest court.

(citing *Burford*, 319 U.S. at 333, 63 S.Ct. 1098).

That brings the court to the second major distinction between *Medigen* and the instant matter. In *Medigen* the PSC had made no decision on the plaintiffs' application for a certificate of convenience and necessity (the hearing before the PSC was continued and had not been rescheduled). *Medigen*, 787 F.Supp. at 593. As a result, the District Court was persuaded that *Burford* abstention was inappropriate, at least in part, because it would not be "undertaking parallel review of a state administrative ruling." *Id.* at 594. In the instant matter, and as the court has explained elsewhere in its decision, the PSC has decided that Plaintiffs must obtain a certificate of convenience and necessity, and the proceedings before the PSC are ongoing.

As in *Burford*, this court must conclude that

> [t]he state provides a unified method for the formation of policy and determination of cases by the Commission and by the state courts. The judicial review of the Commission's decisions in the state courts is expeditious and adequate. Conflicts in the interpretation of state law, dangerous to the success of state policies, are almost certain to result from the intervention of the lower federal courts. On the other hand, if the state procedure is followed from the Commission to the State Supreme Court, ultimate review of the federal questions is fully preserved here.

*Burford,* 319 U.S. at 333–34, 63 S.Ct. 1098. For those reasons, the court finds abstention under *Burford* to be appropriate.

The court has found abstention appropriate pursuant to *Younger* and *Burford,* and, as a result, it is unnecessary to address abstention under *Colorado River* or the remaining arguments raised by the parties. Because the court has determined that it should abstain from considering Plaintiffs' federal question claims, the court declines supplemental jurisdiction over the State law claims (to the extent such jurisdiction exists) pursuant to 28 U.S.C. § 1367(c). *See Verizon Maryland Inc. v. RCN Telecom Services, Inc.,* 248 F.Supp.2d 468, 487–88 (D.Md.2003) (suggesting that a court may be obligated not to decide a state law claim when the principles of abstention dictate).

Accordingly, it is hereby **ORDERED** that the Motion to Dismiss filed by the PSC Defendants (# 18), the Motion to Dismiss filed by Intervenor–Defendant the WV Association of Solid Waste Haulers and Recyclers (# 20), and the Motion to Dismiss filed by Intervenor–Defendant BFI Waste Systems of North America, Inc. (# 22) are **GRANTED** for the reasons discussed further above. It is further hereby **ORDERED** that this matter is DISMISSED from the docket of this court.

The Clerk is requested to mail a copy of this Memorandum Opinion and Order to all counsel of record and post this published opinion at *http://www.wvsd.uscourts.gov.*